IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2024 JAN 24 P 2: 40
TREY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| BEVERLY ROBERTS, and<br>MARY ALSTON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WETUMPKA;<br>JERRY WILLIS, in his individual<br>capacity; GREG BENTON, in his<br>individual capacity; ED REEVES, in his<br>individual capacity; KAMERON RICKS,<br>in his individual capacity; JASON<br>CRUMPTON, in his individual capacity;<br>and BRENDEN FOSTER, in his<br>individual capacity,<br><br>Defendants. | CASE NO.:<br>2:24-CV-00035-MHT-SMD<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

Plaintiffs Beverly Roberts ("Ms. Roberts") and Mary Alston ("Ms. Alston") hereby file this Complaint against Defendants City of Wetumpka and Jerry Willis, Greg Benton, Ed Reeves, Kameron Ricks, Jason Crumpton, and Brenden Foster in their individual capacities.

### I. INTRODUCTION

The Constitution protects citizens of this country from police abuse. When police engage in abusive conduct that violates a citizen's clearly established constitutional rights, the offending officers may be held individually liable for the damages that their abusive conduct caused. And when the abusive conduct is done at the direction of a "final policymaker," the municipality may be held liable as well.

1

This Complaint seeks compensatory and punitive damages under federal and state law for the outrageous, malicious abuse that City of Wetumpka police inflicted on Ms. Roberts and Ms. Alston on June 25, 2022 and thereafter. Specifically, on June 25, 2022, Defendants Ricks, Crumpton, and Foster—each of whom is a City of Wetumpka patrol officer—violently handcuffed Ms. Roberts (an 86-year-old woman) and Ms. Alston (a 61-year-old woman), aggressively forced them into a police car, and then unjustifiably jailed them. They did so under color of state law, based on a patently absurd, obviously pretextual assertion that Ms. Roberts and Ms. Alston were "trespassing" on public property. The officers' arrest and jailing of Ms. Roberts and Ms. Alston was done at the specific direction of defendants Willis (the city's mayor), Benton (the Chief of Police), and Reeves (the Assistant Chief of Police), each of whom would qualify as a "final policymaker" for purposes of federal civil rights laws. Working with local prosecutors, the defendants then arranged to have Ms. Roberts and Ms. Alston criminally prosecuted, based on the same absurd and pretextual "trespass" accusations, as well equally pretextual and bogus "disorderly conduct" and "obstruction of government operations" charges.

The unlawful, unreasonable police abuse and malicious prosecution to which Ms. Roberts and Ms. Alston were subjected was motivated by specific animus. Willis, Benton, and Reeves were angry that Ms. Roberts and Ms. Alston were engaging in the lawful practice of safely and responsibly capturing stray cats and then arranging for the cats' spaying, neutering, and homing. And Willis was angry that Ms. Roberts and Ms. Alston frequently complained, both publicly and to officials at Wetumpka City Hall, that Willis was failing to enforce laws and ordinances prohibiting the "chaining" of dogs, an inhumane but unfortunately common practice that can result in strangulation. Willis, Benton, and Reeves directed the unlawful arrest and malicious prosecution of Ms. Roberts and Ms. Alston to retaliate against them for exercising their First

2

Amendment rights to peaceably assemble on public property, engage in expressive conduct (*viz.*, the practice of trap, neuter, and release), and engage in peaceful political speech (*viz.*, complaining about Mayor Willis's refusal to enforce animal rights laws).

The abusive police conduct to which Ms. Roberts and Ms. Alston were unconstitutionally subjected caused them significant physical and emotional injuries for which they are entitled to compensatory and punitive damages.

## II.   THE PARTIES

1. Plaintiff Roberts is an 86-year-old citizen of Alabama. She has no criminal record and has been a law-abiding citizen her entire life.

2. Plaintiff Alston is a 61-year-old citizen of Alabama. She has no criminal record and has been a law-abiding citizen her entire life.

3. Defendants Ricks, Crumpton, and Foster are patrol officers with the City of Wetumpka Police Department. They are each citizens of Alabama. They are named as defendants in their personal capacities.

4. Defendant Willis is the mayor of the City of Wetumpka. He is a citizen of Alabama. He is named as a defendant in his personal capacity.

5. Defendant Benton is the Chief of Police of the City of Wetumpka Police Department. He is a citizen of Alabama. He is named as a defendant in his personal capacity.

6. Defendant Reeves is the Assistant Chief of Police of the City of Wetumpka Police Department. He is a citizen of Alabama. He is named as a defendant in his personal capacity.

7. Defendant City of Wetumpka is a municipality located in Elmore County, Alabama. The City is entrusted with the proper operation and management of the Wetumpka Police Department, including the supervision, training and management of officers and employees. The

City of Wetumpka authorized, ratified and/or condoned the policies, procedures, customs, and practices that govern the duties and actions of all officers and employees of the Wetumpka Police Department, including the individually named defendants. Defendants Willis, Benton, and Reeves are properly considered to be the City's "final policymakers" with respect to the Wetumpka Police Department.

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1343(3)-(4) (civil rights jurisdiction), and § 1347 (supplemental jurisdiction).

9. This Court has general personal jurisdiction over the defendants because they all reside in this District, and this Court has specific personal jurisdiction over the defendants because the acts from which this action arises occurred in this District.

10. This Court has venue over this action under 28 U.S.C. § 1391(b) because the acts from which this action arises occurred in this District, and because the defendants all may be found in this District.

### IV. FACTUAL ALLEGATIONS

11. Feral cats have been a recurring problem in the City of Wetumpka and surrounding area. Feral cats suffer from neglect, malnutrition, and disease. Unless feral cats are spayed and neutered, their populations increase.

12. Millions of cats enter U.S. shelters each year, but many do not make it out alive. Recent estimates show that nearly 1 million cats are euthanized in animal shelters each year, meaning about 2,500 potentially adoptable cats are killed each day simply because there is no home available for them.

13. A well-known method of controlling feral cat populations is a "trap-neuter-release"—or "TNR"—program. A TNR program involves the safe, responsible capture of feral cats, following which they are humanely spayed or neutered and then released or in some instances adopted. The Humane Society and other animal rights organizations strongly support TNR programs. TNR programs help reduce the number of cats entering shelters by curbing their reproduction. This allows shelters with limited resources to focus more on identifying adopters for the cats currently in their care, rather than working to find space in their facility, or creating it through euthanasia.

14. TNR programs also provide health benefits to cats, such as protection from certain cancers of the reproductive organs. Most clinics, in additional to spay/neuter, vaccinate these feral cats for rabies. There are behavioral benefits as well, such as a decreased desire to vocalize, mark, wander, and fight over territory.

15. Spay and neuter procedures are safe and common. After being trapped and spayed or neutered, cats are typically back to behaving as their usual selves within 24-48 hours. Recovery can be even quicker for kittens. By spaying/neutering cats, each is provided with lifetime benefits, and it aids in reducing reproduction within feral colonies.

16. When an individual engages in TNR, third party observers understand that the individual is not merely engaging in lawful conduct, but also is expressing a message regarding animal rights.

17. Ms. Roberts and Ms. Alston routinely participated in caring for feral cats and engaged in TNR in and around the City of Wetumpka, Alabama. They did so because neither the Humane Society nor any other animal rights organization had the resources to conduct TNR in or around the City of Wetumpka.

18. On or about June 25, 2022, Ms. Alston arrived on public property at Hill Street in Elmore County, Alabama. She set a trap to catch a female cat that she was planning to have spayed. She was sitting in her car waiting for the trap to ping when she saw defendant Willis, the Mayor of the City of Wetumpka, drive past. Within minutes, three police vehicles drove past, following the same path as Willis. Three to five minutes thereafter, the three police vehicles returned. At the time, Ms. Alston was sitting in her car on public property on Hill Street. Willis later admitted that, after he observed Ms. Alston apparently engaging in TNR on public property, he had ordered the police to accost her.

19. The three police vehicles were being driven by defendants Ricks, Crumpton, and Foster. The three officers parked their vehicles a few yards away from Ms. Alston. They approached Ms. Alston and demanded that she leave, notwithstanding that she was simply sitting on public property. Ricks, Crumpton, and Foster then departed the scene.

20. A few minutes later, Ms. Roberts arrived at the Hill Street location to join Ms. Alston. Ms. Roberts and Ms. Alston were peaceably assembling on public property and were not violating any laws. Shortly thereafter, Ricks, Crumpton, and Foster returned in their squad cars. They then got out of their cars, approached Ms. Roberts, and told Ms. Roberts that they were going to arrest her. They ordered Ms. Roberts out of her vehicle and handcuffed her. Upon observing this, Ms. Alston attempted to speak with the officers in an attempt to understand why they were arresting Ms. Roberts. The officers ordered Ms. Alston to quit talking and to get in her vehicle. Ms. Alston complied with the officers' demand to get back into her vehicle but continued to try to speak to the officers. Defendant Foster responded by grabbing Ms. Alston, jerking her out of her vehicle by force, and then handcuffing her. Having aggressively handcuffed both Ms. Roberts (who was 84-years-old at the time) and Ms. Alston (who was 60-years-old at the time), the officers

then told Ms. Roberts and Ms. Alston that they were under arrest, forced them into police vehicles, and transported them to jail to be booked and incarcerated.

21.   At the time they handcuffed and arrested Ms. Roberts, defendants Ricks, Crumpton, and Foster were aware that Ms. Roberts was not only 84-years-old, but also that she was a disabled veteran. They were also aware that Ms. Alston had a heart condition that was being treated with prescription heart medication. Upon being arrested, Ms. Alston told defendants Ricks, Crumpton, and Foster that the medication was located in her purse and that she needed to be in possession of the medication if they were jailing her. The officers refused Ms. Alston's request, depriving her of her medication.

22.   Upon being jailed, Ms. Roberts lost consciousness, fell to the floor, and hit her head. A police officer defendant observed this but did nothing. Ms. Roberts was not provided any medical assistance. Ms. Roberts requested to make a phone call, but this was denied. She was told that a phone call was a "privilege, not a right." This is contrary to Alabama law.

23.   After learning that Ms. Alston had been arrested, Ms. Alston's husband came to the jail to post bail for Ms. Roberts and Ms. Alston. Specifically to prolong Ms. Roberts's and Ms. Alston's unlawful detention, however, defendants Ricks, Crumpton, and Foster intentionally failed or refused to complete all paperwork necessary for the bail to be processed. This resulted in Ms. Roberts and Ms. Alston being detained in jail for several additional hours.

24.   Defendants Ricks, Crumpton, and Foster later charged Ms. Roberts and Ms. Alston with committing criminal acts, including the crimes of criminal trespass, obstructing governmental operations and disorderly conduct. The charges were brought at the specific direction of defendants Willis (the Mayor), Benton (the Chief of Police), and Reeves (the Assistant Chief of Police), all of whom qualified as "final policymakers." The charges were bogus, and the

7

defendants knew this. The charges were brought maliciously, to harass and embarrass Ms. Roberts and Ms. Alston and to deter them from exercising their right to engage in TNR and to peaceably assemble on public property.

25. On or about December 13, 2022, Plaintiffs appeared for their criminal trial on the bogus criminal charges that had been brought against them. The trial was a bench trial. Immediately prior to the start of the trial, the Municipal Judge presiding over the trial, the Wetumpka City Prosecutor, defendant Willis (the Mayor), the Municipal Court Clerk, and several police officers expected to be called as witnesses conducted a visible prayer session in the Municipal Court Clerk's office, which was located next to the courtroom but out of the hearing of the general public.

26. After a trial at which Ms. Roberts and Ms. Alston were deprived of a neutral and completely impartial factfinder, the Municipal Judge who participated in the pre-trial prayer session with defendant Willis and the prosecutor found Ms. Roberts and Ms. Alston guilty of the alleged crimes of criminal trespass, obstructing governmental operations and disorderly conduct. He sentenced Ms. Roberts and Ms. Alston to 10 days in jail, suspended, two years supervised probation, and a $50 fine on each charge.

27. On or about December 19, 2022, Ms. Roberts and Ms. Alston promptly and timely appealed each of the criminal convictions in Municipal Court to the Circuit Court of Elmore County and requested a trial before a fair and impartial jury of their peers. On or about April 8, 2023, while that appeal was still pending, the City of Wetumpka requested the Circuit Court to dismiss all criminal charges against Plaintiffs.

28. On or about April 12, 2023, over ten months after being wrongfully and unlawfully arrested, incarcerated, and brought up on bogus charges, the City of Wetumpka requested the

Circuit Court of Elmore County to dismiss all criminal charges against Ms. Roberts and Ms. Alston.

29.     During the years preceding the unlawful arrests of Plaintiffs, the City of Wetumpka has almost always supported an officer's arrest without probable cause and the use of excessive force as proper and acceptable, even when the officer violated policy and/or used excessive, unconstitutional, and/or unskillful force. Upon information and belief, the City of Wetumpka is rarely, if ever, critical of any of its own officer's arrest without probable cause or use of excessive force, and even then, no real discipline, education, or training is ever imposed.

30.     The City of Wetumpka has thus established a custom or practice of ratifying and condoning the use of excessive, unconstitutional, and/or unskillful force—a custom and practice that all officers knew would always protect them, even if they used excessive, unconstitutional, and/or unskillful force.

31.     City of Wetumpka officials, including Willis, Benton, and Reeves, were subjectively aware that patrol officers had little to no training on how to apply the use of force and knew of the risk of harm of such a lack of training, but explicitly or implicitly allowed the custom and practice of non-training to continue.

32.     The City of Wetumpka was on notice of this custom and practice from complaints, communications from officers, from officers' own observations and admissions, from common sense, from other injuries and deaths, from other lawsuits, and by other ways.

33.     The City of Wetumpka failed to properly train or modify the training of police officers, and specifically knew that officers and other employees needed specific training regarding these situations. Nonetheless, with deliberate indifference to the rights of citizens, no person with

the Wetumpka Police Department provided adequate training to officers and others on its staff regarding these situations.

34. It was well known that the City of Wetumpka had a custom and practice of allowing its officers and employees to use excessive, unconstitutional, and/or unskillful force.

35. Defendants Willis, Benton, and Reeves, acting as "final policymakers," collectively directed defendants Ricks, Crumpton, and Foster to accost, handcuff, arrest, jail, and charge Ms. Roberts and Ms. Alston notwithstanding that they knew that Ms. Roberts and Ms. Alston were not committing any offense of any kind.

36. As a direct and proximate result, Plaintiffs incurred damages, including, but not limited to physical injury and emotional distress, as a result of the unlawful acts taken and discriminatory practices, policies, customs and procedures as stated herein.

## COUNT I

### 42 U.S.C. § 1983 (Unlawful Seizure and Detention)

### (All Defendants)

37. Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding paragraphs 1 through 36, as well as the introductory paragraphs.

38. On or about June 25, 2022, defendants Kameron Ricks, Jason Crumpton, and Brenden Foster, acting individually and in collusion with and/or pursuant to the direct and specific commands and directions of defendants Mayor Jerry Willis, Chief of Police Greg Benton, and Assistant Chief of Police Ed Reeves, each while acting under color of state law, deprived plaintiffs Beverly Roberts and Mary Alston of their constitutional rights under the Fourth and Fifth Amendments, as well as their First Amendment right to peaceably assemble on public property, to engage in expressive conduct, and to engage in peaceful political protest, by aggressively, forcibly,

injuriously, unreasonably, and unlawfully seizing, arresting, and then jailing them without a warrant, without probable cause, and without a bona fide lawful basis.

39. As a direct and proximate result of the defendants' violations of Ms. Roberts's and Ms. Alston's constitutional rights, Ms. Roberts and Ms. Alston suffered damages for which they are entitled to compensation, including physical injury, mental anguish, and emotional distress.

## COUNT II

### 42 U.S.C. § 1983 (Excessive Force)

### (All Defendants)

40. Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding paragraphs 1 through 36, as well as the introductory paragraphs.

41. On or about June 25, 2022, defendants Kameron Ricks, Jason Crumpton, and Brenden Foster, acting individually and in collusion with and/or pursuant to the direct and specific commands and directions of defendants Mayor Jerry Willis, Chief of Police Greg Benton, and Assistant Chief of Police Ed Reeves, each while acting under color of state law, deprived plaintiffs Beverly Roberts and Mary Alston of their constitutional rights under the Fourth and Fifth Amendments by using unreasonably excessive force to arrest and incarcerate Ms. Roberts and Ms. Alston.

42. As a direct and proximate result of the defendants' violations of Ms. Roberts's and Ms. Alston's constitutional rights, Ms. Roberts and Ms. Alston suffered damages for which they are entitled to compensation, including physical injury, mental anguish, and emotional distress.

## COUNT III

### 42 U.S.C. § 1983 (Malicious Prosecution)

### (All Defendants)

43. Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding paragraphs 1 through 36, as well as the introductory paragraphs.

44. Acting as final policymakers, defendants Mayor Jerry Willis, Chief of Police Greg Benton, and Assistant Chief of Police Ed Reeves, each while acting under color of state law, deprived plaintiffs Beverly Roberts and Mary Alston of their constitutional rights under the Fourth and Fifth Amendments by maliciously arranging for, directing, and causing the City of Wetumpka Prosecutor to criminally prosecute Ms. Roberts and Ms. Alston on bogus charges. The prosecution was based on charges that defendants Ricks, Crumpton, and Foster filed against Ms. Roberts and Ms. Alston, knowing that the charges were bogus and knowing that the charges would result in criminal prosecution.

45. As a direct and proximate result of the defendants' violations of Ms. Roberts's and Ms. Alston's constitutional rights, Ms. Roberts and Ms. Alston suffered damages for which they are entitled to compensation, including loss of reputation, mental anguish, emotional distress, and economic loss.

## COUNT IV

### 29 U.S.C. § 701, et seq. (violation of the Rehabilitation Act)

### (Defendant City of Wetumpka)

46. Plaintiff Beverly Roberts realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 36, as well as the introductory paragraphs.

47. On information and belief, the Defendant City of Wetumpka has received, and currently receives, federal funding within the meaning of the Rehabilitation Act, 29 U.S.C. § 701 et seq.

48. Plaintiff Beverly Roberts is an individual with disabilities that qualify for consideration and protection under the Rehabilitation Act, 29 U.S.C. § 701 et seq.

49. Section 504 of the Rehabilitation Act prohibits discrimination and retaliation on the basis of disability by any entity, and in any program and/or activity, receiving federal financial assistance.

50. Section 504 of the Rehabilitation Act imposes an affirmative obligation on the City of Wetumpka to ensure that all programs and services are accessible to people with disabilities, including the providing of reasonable modifications.

51. The City of Wetumpka intentionally, deliberately, and willfully discriminated and retaliated against Ms. Roberts due to her disability and/or perceived disability, in callous disregard of her rights under the Rehabilitation Act, and in violation of its affirmative duties under the Rehabilitation Act.

52. By reason of the City of Wetumpka's discrimination and retaliation, Ms. Roberts sustained physical injuries for which she is entitled to all legal and equitable remedies available under the Rehabilitation Act, including money damages and other relief.

## COUNT V

## MALICIOUS PROSECUTION

### (All Defendants)

53. Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding paragraphs 1 through 36, as well as the introductory paragraphs.

54. Acting as final policymakers, defendants Mayor Jerry Willis, Chief of Police Greg Benton, and Assistant Chief of Police Ed Reeves, each while acting under color of state law, deprived plaintiffs Beverly Roberts and Mary Alston of their constitutional rights under the Fourth and Fifth Amendments by maliciously arranging for, directing, and causing the City of Wetumpka Prosecutor to criminally prosecute Ms. Roberts and Ms. Alston on bogus charges. The prosecution was based on charges that defendants Ricks, Crumpton, and Foster filed against Ms. Roberts and Ms. Alston, knowing that the charges were bogus and knowing that the charges would result in criminal prosecution.

55. As a direct and proximate result of the defendants' violations of Ms. Roberts's and Ms. Alston's constitutional rights, Ms. Roberts and Ms. Alston suffered damages for which they are entitled to compensation, including loss of reputation, mental anguish, emotional distress, and economic loss.

## COUNT VI

### NEGLIGENCE AND/OR WANTONNESS

56. Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding paragraphs 1 through 36, as well as the introductory paragraphs.

57. On or about June 25, 2022, Defendants Kameron Ricks, Jason Crumpton, and Brenden Foster, acting individually and in collusion with, and/or pursuant to the direct and specific commands and directions of Defendants Mayor Jerry Willis, Chief of Police Greg Benton and Assistant Chief of Police Ed Reeves, each acting individually and while acting under color of state law, without probable cause, wrongfully arrested and instituted unfounded criminal charges against Plaintiffs, which charges were later dismissed by the Circuit Court of Elmore County on or about April 12, 2023.

58. Defendants Kameron Ricks, Jason Crumpton, and Brenden Foster, acting individually and in collusion with, and/or pursuant to the direct and specific commands and directions of defendants Mayor Jerry Willis, Chief of Police Greg Benton and Assistant Chief of Police Ed Reeves, each acting individually and while acting under color of state law, negligently, recklessly and/or wantonly arrested Ms. Roberts and Ms. Alston in violation of her constitutional rights by unreasonably searching and seizing her and falsely arresting her, in violation of her rights and protections provided by both State and Federal Law, including the United States Constitution.

59. Defendants Kameron Ricks, Jason Crumpton, and Brenden Foster, acting individually and in collusion with, and/or pursuant to the direct and specific commands and directions of defendants Mayor Jerry Willis, Chief of Police Greg Benton and Assistant Chief of Police Ed Reeves, each acting individually and while acting under color of state law, acted willfully, maliciously, fraudulently, in bad faith, beyond his authority or under a mistaken interpretation of the law when each either ordered the arrest or wrongfully arrested and instituted unfounded criminal charges against Plaintiffs.

60. As a direct and proximate result of each individual defendant's negligence and/or wantonness, Ms. Roberts and Ms. Alston suffered personal and monetary damages, including mental anguish and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Beverly Roberts and Mary Alston respectfully request that this Court grant the following damages and relief against each individually named defendant:

a) compensatory damages, including mental anguish and emotional distress;

b) punitive damages;

c) court costs and reasonable attorneys' fees; and

d) equitable and such further, other, and different relief as the Court may deem appropriate and necessary.

## JURY DEMAND

Plaintiffs hereby request trial by jury on all issues so triable.

**Respectfully submitted this 23rd day January 2024.**

*William A. Shashy*
William A. Shashy
SHASHY LAW FIRM LLC
525 Cloverdale Road
Montgomery, AL 36106
shashyoffice@gmail.com
(334) 221-9484

*Tiernan W. Luck*
Tiernan W. Luck, III
LUCK LAW LLC
621 South Hull Street
Montgomery, AL 36104
twl@lucklaw.com
(334) 262-5455

*Aaron Katz*
Aaron Katz (*pro hac vice* forthcoming)
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, MA 02116
akatz@aaronkatzlaw.com
(617) 915-6305

**PLAINTIFF WILL SERVE EACH OF THE FOLLOWING NAMED DEFENDANTS BY PROCESS SERVER, AS FOLLOWS:**

**CITY OF WETUMPKA**
408 South Main Street
Wetumpka, Alabama 36092

**MAYOR JERRY WILLIS**
408 South Main Street
Wetumpka, Alabama 36092

**CHIEF OF POLICE GREG BENTON**
4950 US Hwy 231
Wetumpka, Alabama 36092

**ASSISTANT CHIEF OF POLICE ED REEVES**
4950 US Hwy 231
Wetumpka, Alabama 36092

**OFFICER KAMERON RICKS**
4950 US Hwy 231
Wetumpka, Alabama 36092

**OFFICER JASON CRUMPTON**
4950 US Hwy 231
Wetumpka, Alabama 36092

**BRENDEN FOSTER**
8505 Georgia Road
Wetumpka, AL